St. Louis & San Francisco Railroad Company et al. v. J. S. Franklin et al.

Decided November 27, 1909.

**1.—Shipment of Live-stock—Measure of Damages—Destination—Charge.**

Where live-stock was shipped on a through bill of lading over the lines of two railroads from B. to P. and the consignee reshipped said stock from P. over the line of another railroad to G., the ultimate destination of said stock, a charge of the court making the condition of the stock at "destination," meaning G., if error at all, was harmless as to the two first carriers from B. to P. in view of special charges, given at the request of said carriers limiting their liability to such damages as occurred on their own lines.

**2.—Carrier of Live-stock—Liability.**

The duties and liabilities of common carriers of live-stock are the same in this State as at common law. The liability of such carrier is that of an insurer of them against loss from any cause except the act of God or of the public enemy, the act of the owner, the vicious propensities or inherent vice, infirmity or character of the animals themselves.

**3.—Same—Negligence—Presumption—Charge.**

Where a shipment of live-stock was not accompanied by the owner, and the undisputed evidence showed that they were in sound condition when received by the carrier, but were damaged when delivered at destination and no proof was offered to show that the animals were damaged by one of the excepted agencies and without negligence on the carriers' part, the presumption of negligence on the part of the carrier will obtain, and a court may so charge a jury. This rule does not apply when the owner accompanies the stock.

**4.—Same—Charge.**

In a suit for damages to a shipment of live-stock, the court charged the jury, among other things, to find for the plaintiff if the animals while en route were handled "unnecessarily rough and were unnecessarily delayed" in transit. Held, not subject to the objection that this was an unauthorized assumption on the part of the court that such handling of the stock and such delay constituted negligence. The use of the word "unnecessarily" was practically equivalent to the use of the word "negligently."

**5.—Same—Connecting Carrier—Evidence.**

The employees of an initial carrier operated the train containing plaintiff's live-stock over the road of a second carrier; the second carrier company alleged, however, in its answer that it owned the line of railroad connecting with the first carrier, and its foreman and agent testified that he received the shipment of stock from the first carrier and that he checked, handled

and delivered it to a third carrier. Held, in the absence of evidence that the road of the second carrier had been leased to the first carrier, the evidence was sufficient to justify a verdict and judgment against the second carrier company for damages to said stock on said road.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter, Judge.

*Andrews, Ball & Streetman* and *Templeton, Craddock, Crosby & Dinsmore,* for appellants.—The evidence showing that the animals were shipped on a through bill of lading from Bentonville, Ark., to Paris, Texas, then reshipped by plaintiff to Greenville, Texas, over the Texas Midland Railroad, it was error to make their condition at "destination" (meaning Greenville) the guide for determining the liability of defendants on a through shipment, which by the terms of the contract and bill of lading ended at Paris, Texas. McCarn v. International & G. N. Ry. Co., 84 Texas, 352; Texas & N. O. Ry. Co. v. Gray, 99 S. W., 1125; Houston D. N. Co. v. Insurance Co. of North America, 89 Texas, 1.

Common carriers, as carriers of live stock, are not absolute insurers of animals against every loss or injury that might occur during the transportation. They are only liable for such loss and damages as may be caused by the negligence of the carrier, and among those which they are not liable for are: injuries arising from or attributable to the natural or proper vices or the inherent natural propensities and habits of the animals themselves, and which could not be prevented by foresight, vigilance and care; and also the natural depreciation and shrinkage of the animals after the transportation began. Texas Cent. Ry. Co. v. Hunter, 104 S. W., 1075; Ft. Worth & R. G. Ry. Co. v. Cage Cattle Co., 95 S. W., 705; Texas & P. Ry. Co. v. Slater, 102 S. W., 156; St. Louis S. W. Ry. Co. v. Lewellen Bros., 116 S. W., 116; Ft. Worth & D. C. Ry. Co. v. Lock, 70 S. W., 456; Missouri, K. & T. Ry. Co. v. Lewellen Bros., 111 S. W., 773; Texas & P. Ry. Co. v. Snyder, 86 S. W., 1041; St. Louis S. W. Ry. Co. v. Smith, 77 S. W., 28; Ft. Worth & D. C. Ry. Co. v. James, 87 S. W., 730; Hutchinson on Carriers (3d ed.), sec. 337; Moore on Carriers, p. 496.

In a shipment of live stock, a common carrier is not absolutely bound to deliver the animals at destination in a sound condition, but is only bound to exercise ordinary care to transport them, and is only liable for such injuries as are caused by its negligence. Texas & P. Ry. Co. v. Stewart, 114 S. W., 413; St. Louis, I. M. & S. Ry. Co. v. Moon, 103 S. W., 1176; Missouri, K. & T. Ry. Co. v. Garrett, 87 S. W., 172.

It was error for the court to instruct the jury that if the animals were received by the initial carrier in a "sound" condition and reached their destination in an "injured" condition, to find for the plaintiff, without further instructing them that such injured condition must have been caused by the negligence of the carrier in the manner of the handling or the dispatch with which they were handled in transportation. St. Louis S. W. Ry. Co. v. Smith, 77 S. W., 28; Gulf, C. & S. F. Ry. Co. v. Stanley, 89 Texas, 42; St. Louis, I. M. & S. Ry. Co. v.

Berry, 93 S. W., 1107; Gulf, C. & S. F. Ry. Co. v. Batte, 94 S. W., 345; Texas Cent. Ry. Co. v. Hunter, 104 S. W., 1075.

The charge was upon the weight of the evidence in singling out certain acts of appellants as amounting to negligence and authorizing a recovery on account of the same. Sayles' Stats., art. 1317; Ft. Worth & D. C. Ry. Co. v. James, 87 S. W., 730; Western U. Tel. Co. v. Lydon, 82 Texas, 364; Missouri Pac. Ry. Co. v. Lee, 70 Texas, 496.

*H. L. Carpenter*, for appellee.—Railroad companies are common carriers of live stock and insurers of its safety, the same as of merchandise, except as to injuries arising from the act of God, the public enemy, the fault of the owner, the vicious propensities or inherent infirmities of the animals. Missouri Pac. Ry. Co. v. Harris, 67 Texas, 166; Gulf, C. & S. F. Ry. Co. v. Trawick, 68 Texas, 314; s. c., 80 Texas, 270-4 (see charge approved on page 274); International & G. N. Ry. v. Nowaski, 106 S. W., 437; 1 Hutchinson, Carriers (3d ed.), sec. 337, note, p. 244; rule recognized in Hunter case, 104 S. W., 1075.

As to injuries occurring through an exception to its absolute liability (created either by law or special contract), the carrier is also liable for a failure to exercise ordinary care proximately contributing to the injury unless the injuries were caused by the owner's neglect. 1 Hutchinson on Carriers, sec. 336, note; Missouri Pac. Ry. Co. v. China Mfg. Co., 14 S. W., 785; Missouri, K. & T. Ry. Co. v. Rich, 112 S. W., 114; Texas & P. Ry. Co. v. Dishman, 85 S. W., 319.

As to shipments not accompanied by the owner or agent, proof of the receipt of the animals by the carrier in sound condition, and their delivery in an injured condition, *prima facie* establishes negligence of the carrier causing or contributing to the injury, and places the burden on the carrier to rebut this presumption by showing (1) that the injuries resulted from one of the excepted causes, and (2) that it was not guilty of negligence contributing thereto. Texas & P. Ry. v. Dishman, 85 S. W., 319 (writ of error); Ft. Worth & D. C. Ry. Co. v. Greathouse, 17 S. W., 834-37; St. Louis & S. F. Ry. Co. v. Brosius, 105 S. W., 1135; Missouri Pac. Ry. Co. v. China Mfg. Co., 14 S. W., 785, 79 Texas, 26-28; Hutchinson on Carriers, sec. 336, note, p. 344; same, section 1357.

And where it is shown that animals unaccompanied by the shipper were received by the carrier in sound condition and were injured when delivered, and the carrier offers no proof that the animals were injured through an excepted cause and without its negligence, or as to how the injuries occurred, the court is not authorized to submit to the jury whether the injuries were occasioned by an excepted cause, or an issue as to the carrier's negligence. Ft. Worth & D. C. Ry. Co. v. Greathouse, 17 S. W., 834-37; Texas & P. Ry. Co. v. Dishman, 85 S. W., 319.

It is the duty of a common carrier to furnish safe, suitable and sufficient cars for the transportation of freight carried by it, and it is liable for damages resulting from a failure to do so, irrespective of the question of negligence. International & G. N. Ry. v. Pool, 59 S. W., 911-12; Hunt v. Nutt, 27 S. W., 1031; 2 Hutchison, Carriers, sec. 497.

But if negligence is an element of liability in such a case, then such failure constitutes negligence. St. Louis & S. F. Ry. v. Brosius, 105 S. W., 1137-8.

Where a party in his pleading, introduction of proof, and by requested charges, assents to the trial of a case on a certain theory, he can not on appeal complain that the court adopted that theory. Gulf, C. & S. F. Ry. Co. v. Josey, 95 S. W., 688.

TALBOT, Associate Justice.—This action was brought by the appellee, J. S. Franklin, to recover damages from the Texas Midland Railroad, the Paris & Great Northern Railway Company, and the St. Louis & San Francisco Railroad Company, alleged to have been inflicted upon two carloads of mules and horses while in transit from Bentonville, Arkansas, to Greenville, Texas. It is alleged, in substance, that on the 9th day of August, 1907, Knott & Gilbreath, as consignors, delivered to the defendant, St. Louis & San Francisco Railroad Company, at Bentonville, Arkansas, twenty-five mules destined to Greenville, Texas, and consigned to plaintiff, who was the owner of said mules; that said mules were by said defendant transported over its line of railway from Bentonville to a point at or near Arthur City and there delivered to the defendant, the Paris & Great Northern Railway Company, which railway company transported said mules to Paris, Texas, at which latter place said mules were delivered to and received by the defendant, the Texas Midland Railroad, and by it transported to Greenville, Texas; that the defendant, the St. Louis & San Francisco Railroad Company, furnished an insufficient and defective car in which to transport said mules and in which they were transported, in that the doors of said car, and especially the fastenings thereof at the bottom, were rotten and were insecurely fastened, so that said mules were permitted and caused thereby to and did put their feet and legs in the space between the bottom of said doors and the sides of the car caused by such insufficient fastenings; that an iron or metal trough was permitted and did extend into and along the sides of said car and project from the sides of said car a distance of about three and one-half feet above the floor; that other pieces of iron and timber also projected from the sides of and extended into said car. That said animals were unnecessarily delayed, and the cars containing them handled unnecessarily rough while in transit; that the furnishing of said defective car, and the transporting of said animals in it, and the rough handling and delays alleged were each and all a failure on the part of each and all of said defendants to use ordinary diligence and reasonable dispatch in transporting said animals. That as a result of such failure of the defendants in one or all of said respects, said animals lost in weight and depreciated in marketable appearance and were skinned, bruised, and their limbs strained and otherwise injured, to plaintiff's damage $700.

That on the 11th day of April, 1907, said Knott & Gilbreath, as consignors, delivered to the defendant, St. Louis & San Francisco Railway Company, at Bentonville, twenty-five horses and mules destined to Greenville, Texas, and of which the plaintiff was the consignee and owner, which horses and mules were transported by said

defendant over its line of railroad to a point near Arthur City, and there delivered to the defendant, the Paris & Great Northern Railway Company, and by that company transported to Paris, Texas, at which point they were delivered to the Texas Midland Railroad, by which road they were transported to Greenville, Texas, and delivered to the plaintiff. That said last-named horses and mules were by each of the defendants unnecessarily and roughly handled in transit, and so injured that they were worth on the market at their destination at the time and in the condition in which they were delivered, less than their market value would have been had it not been for such delay and rough handling, to plaintiff's damage $305.

The defendants filed separate answers, and, after demurrers and a general denial, the St. Louis & San Francisco Railroad Company and Paris & Great Northern Railway Company plead specially that each of said shipments of horses and mules were received under and by virtue of the terms of a contract in writing entered into by and between the defendant, the St. Louis & San Francisco Railroad Company, and the consignors and shippers of said stock, by the terms of which it was expressly agreed and understood that the destination of each of said shipments being beyond the line of the defendant, that it was authorized to deliver the cars containing said stock to its connecting carrier for transportation under the terms and stipulations, limitations and agreements respecting such further transportation as might be agreed upon between the shippers and such connecting carriers; and further providing that if no other such contract was required or executed to cover the movement of the shipment over the line of any carrier en route, then such carrier should have the benefit of all the stipulations and conditions in the contracts so executed as first hereinabove alleged, and that each carrier en route should only be liable for loss or damage occurring on its own line; that in accordance with said shipping contracts, each duly, safely and reasonably transported said stock without any delay over its line of railroad to the terminus of its line of railroad and there delivered the same to its connecting carrier free from all injury or damage while in its possession, and that the said stock were duly, seasonably and promptly transported to Paris, Texas, and there delivered to the consignee in accordance with the terms of said contracts free from all injury or damage while in the possession of either of them.

The defendant, the Texas Midland Railroad, also plead that in accordance with said shipping contracts it received said stock from the Paris & Great Northern Railway Company at Paris, Texas, and safely, promptly and without delay, and without rough handling other than that which is naturally incident to the transportation of stock on railroads, transported the same in accordance with the terms of said contracts over its railroad to Greenville, Texas, and there delivered the same in each instance to the consignee, the plaintiff herein, in the same condition as when it received the same from its connecting line, the Paris & Great Northern Railway Company, and free from all injury and damage or delay while in the possession of this defendant. Each of said defendants also denied under oath that any partnership or agency existed between them.

A jury trial resulted in a verdict and judgment in favor of the plaintiff against the St. Louis & San Francisco Railroad Company for the sum of $595, against the Paris & Great Northern Railway Company for the sum of $75, and that he take nothing as against the Texas Midland Railroad. From the verdict and judgment rendered against them the St. Louis & San Francisco Railroad Company and the Paris & Great Northern Railway Company have appealed.

The first assignment of error is as follows: "The court erred in the fourth paragraph of its charge to the jury in these words: 'And the burden is on the plaintiff to prove the negligence alleged by him, and that such negligence was the proximate cause of the injuries (if any) complained of; but as to the shipment of August 9, 1907, which was not accompanied by the plaintiff, you are instructed that if the plaintiff has established that the said animals were delivered to defendant, St. Louis & San Francisco Railroad Company, at Bentonville, in a sound condition, and reached their destination in an injured condition, as alleged, then it would be presumed that their said injuries (if injured) were caused by such negligence in their transportation; and the presumption would also be that such injuries (if any) occurred on the line of the last railroad company which carried them; but each of these presumptions may be rebutted, and the burden is upon the defendants to rebut the same, and upon the last company carrying said animals to show that the injuries (if any) did not occur on its lines.'" The main propositions contended for under this assignment are: (1) The evidence showing that the animals were shipped on a through bill of lading from Bentonville, Arkansas, to Paris, Texas, then re-shipped by plaintiff to Greenville, Texas, over the Texas Midland Railroad, it was error to make their condition at "destination" (meaning Greenville) the guide for determining the liability of defendants on a through shipment, which by the terms of the contract and bill of lading ended at Paris, Texas. (2) That in a shipment of live stock a common carrier is not absolutely bound to deliver the animals at destination in a sound condition, but is only bound to exercise ordinary care to transport them, and is only liable for such injuries as are caused by its negligence; therefore, the portion of the charge wherein the jury are told that "if the plaintiff has established that the said animals were delivered to defendant, St. Louis & San Francisco Railroad Company, at Bentonville, in a sound condition and reached their destination in an injured condition, as alleged, then it would be presumed that their said injuries, if injured, were caused by such negligence in their transportation," was error.

The answer to the first proposition is that if it can be said that the paragraph of the court's charge in question, standing alone, was error in the respect asserted in the proposition, then such error was entirely cured by two special charges given at the instance of appellants. These charges are identically the same, and are to the effect that each of the defendants was only responsible for the handling of the alleged shipments while on their respective lines of road and for the injuries, if any, that occurred to the shipments while on their respective lines of road, and that the liability and responsibility of each carrier ceased upon its delivery of said shipment to its connecting carrier. These

special charges were evidently asked and given in view of provisions in the bill of lading, confining the liability of each of the appellants to any injury or damage which might occur on its own road, although it appeared that when appellee delivered his stock to the initial carrier at Bentonville, Arkansas, he intended to have them transported to Greenville, Texas, as their ultimate destination, and in view of such specific instructions it is altogether improbable, it seems to us, that the jury may have concluded, from the charge complained of, that either of the appellants was liable for any injuries occurring to appellee's stock after the same was delivered to its connecting carrier.

With respect to the second proposition, we think it must be held that it does not, under the facts, state the law of this State, and of many other States, correctly. Our statute provides that the duties and liabilities of common carriers in this State shall be the same as prescribed by the common law, and the liability imposed upon such carriers by the common law, in respect to the transportation of live stock, is that of an insurer of them against loss from any cause except the act of God or of the public enemy, the act of the owner, the vicious propensities or inherent vice, infirmity or character of the animals themselves. (Gulf, C. & S. F. Ry. Co. v. Trawick, 68 Texas, 314; Missouri Pac. Ry. Co. v. Harris, 67 Texas, 166; Railway Company v. Stribling, 34 S. W., 1002; International & G. N. Railway Co. v. Nowaski, 48 Texas Civ. App., 144; 1 Hutchinson on Carriers (3d ed.), secs. 336-7, and note.) The rule insisted upon by appellants, to the effect that live stock can not properly be considered as a commodity which, under the common law, the carrier is bound to transport subject to its liability as an insurer, but that the acceptance of such stock by the carrier imposes the duty of exercising only ordinary care and renders him responsible for only those injuries occasioned by his negligence, has been adopted by some of the States, but we do not understand that such is the rule of this State, nor of many other States, but is as above stated. The carrier does not absolutely warrant live stock against the consequences of its own vitality, and, in the absence of negligence, is relieved from responsibility for such injuries as occur from such source. They are not insurers of animals against injuries arising from their nature and propensities and which could not be prevented by reasonable care, foresight and vigilance. Therefore, as said by Mr. Hutchinson, "Where the injuries occur by reason of the inherent vices or natural propensities of the animals themselves, the carrier is relieved from responsibility if he can show that he had provided all suitable means of transportation and exercised that degree of care which the nature of the property requires." In the case at bar the undisputed evidence showed that the animals were not accompanied by their owner, but were in the exclusive possession and control of the railway companies; that they were received by the initial carrier in sound condition, and were injured when delivered to appellee at destination. No proof was offered to the effect that the animals were injured by one of the excepted agencies, and without negligence on appellants' part, which would exonerate them or either of them from liability under the common law rule announced. In such case the presumption of negligence will obtain, and the court is warranted in so

instructing the jury. By such a charge a recovery is not allowed without the existence of the essential element of negligence, but the jury are told that under such a state of facts negligence will be presumed. We therefore conclude, as the practically undisputed evidence showed that the stock in question was uninjured when delivered to the appellant, St. Louis & San Francisco Railroad Company, at Bentonville, and reached their destination in a damaged condition, the charge under consideration was not erroneous in any of the particulars of which complaint is made. The delivery of the stock in a sound or uninjured condition to the initial carrier being shown, and it further appearing that the stock was delivered to the consignee at destination in an injured condition, established a prima facie case of negligence against appellants, and the burden then rested upon them to show that such injured condition of the stock resulted from the inherent nature or propensity or "proper vice" of the animals, and without failure on their part. Appellants have cited several cases, the most of them decided by the Court of Civil Appeals for the Second District, as announcing the contrary rule above referred to and contended for by them. We have examined those cases, and if they are not distinguishable in the facts from this case, then we think they are at variance with the decisions of the Supreme Court of this State and the weight of authority elsewhere. In shipments where the owner accompanies the stock under a specific contract to take care of them himself and is given an opportunity to do so, the rule announced in this opinion does not apply, for the reason that, in such a case, the facts in regard to the injury of the stock are not peculiarly or exclusively within the knowledge of the carrier, as they are when unaccompanied by their owner, but the owner may be presumed to be as well acquainted with them as the carrier. (Texas & P. Railway Co. v. Arnold, 16 Texas Civ. App., 74; 4 Elliott on Railroads, sec. 1549.)

The further contention of appellants, that the charge attacked was misleading because in conflict with a special charge given at the request of the Texas Midland Railroad, is, we think, without merit.

The second assignment of error complains of the sixth paragraph of the court's charge in which the jury were instructed in substance that, if the animals shipped August 9, 1907, were delivered to the St. Louis & San Francisco Railroad Company in a sound condition, and that the car furnished by said company for their transportation was defective, as alleged by plaintiff, and that said company was guilty of negligence in furnishing such a car; or if the animals while en route were handled unnecessarily rough and were unnecessarily delayed and injured, as alleged, when they reached Greenville, to find in favor of plaintiff and against the Texas Midland Railroad, unless the said St. Louis & San Francisco Railroad Company furnished a defective car for the shipment and the injuries to the animals were proximately caused by such defective car, and that the Texas Midland Railroad was not negligent in handling said shipment, or that the injuries did not occur on its line; that if the St. Louis & San Francisco Railroad Company furnished a defective car and such car was the proximate cause of the injuries to the animals, and said last-named company was negligent in handling said animals, as alleged, and as a proximate result

thereof they were injured on its line of road, their verdict should be against the St. Louis & San Francisco Railroad Company; that if the Paris & Great Northern Railway Company was negligent in handling said animals, as alleged, and as a proximate result thereof, said injuries occurred on its line, to find against that company. The objections urged to this charge are: (1) That it authorized a recovery against the appellants if the animals were received by the initial carrier in a sound condition and reached their destination in an injured condition, without further instructing the jury that such injured condition must have been caused by the negligence of the carrier in the manner of handling or the dispatch with which they were handled in transportation; (2) that the charge was upon the weight of the evidence in singling out certain acts of appellants, namely, the unnecessary rough handling and unnecessary delay of the shipment, as amounting to negligence and authorizing a recovery on account of the same; (3) that there was no proof tending to show that there was any unnecessary rough handling or any unnecessary delay in transporting the shipment, or that any of the injuries complained of were caused by either rough handling or delay while the animals were being transported.

This paragraph of the court's charge is not subject to the first objection urged. When read and considered as a whole it required the jury to believe, in order to return a verdict in favor of the plaintiff for damages to the animals shipped August 9th, not only that said animals were in a sound condition when received by the initial carrier and injured when delivered to their owner at destination, but that said initial carrier was guilty of negligence in furnishing a defective car for their transportation, and that both appellants were negligent in handling them. If, however, the charge is subject to the criticism contained in the objection, the question presented has been determined against appellants' contention, in disposing of their first assignment of error.

We are also of the opinion that the second objection is not well taken. As has been seen, the clause of the charge here objected to authorized a verdict for the plaintiff if the animals while en route were handled "unnecessarily rough and were unnecessarily delayed" in transit. The contention is, that this was an unauthorized assumption on the part of the court that such handling of the stock and such delay constituted negligence. That the qualifying adverb, "unnecessarily," used in the charge, did not import or signify that the animals were negligently handled and negligently delayed. In this contention we are not prepared to concur. The word "unnecessarily" means heedlessly; without necessity; outside of the usual course of business pertaining to the subject. Webster Dictionary; Purdy v. Lynch, 40 N. E., 232. "Negligence" is an English word of well-known meaning, and not a mere technical term. According to Webster's International Dictionary, it means a "lack of due diligence or care; omission of duty; heedlessness." Mr. Cooley, in his work on Torts, 2d volume (3d ed.), page 1324, says that "Negligence in a legal sense is no more nor less than the failure to observe, for the protection of the interest

of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." As applied to an act done in the discharge of a duty imposed, it is said by our courts to be a failure to do what an ordinarily prudent person would have done under the circumstances of the situation or the doing of that which such a person, under the existing conditions would not have done. Now, according to the foregoing definitions to do an act unnecessarily is to do it heedlessly, without any necessity therefor and outside of the usual course of business pertaining to the subject to which the act relates; and to do the act negligently is to do it heedlessly, without the observance, for the protection of the interest of another person who may suffer injury thereby, of that degree of care, precaution and vigilance which the circumstances justly demand and which an ordinarily prudent person would have observed. There is, therefore, it seems to us, no practical difference in the meaning of the two words, and that if appellants handled appellee's horses and mules unnecessarily rough and unnecessarily delayed their transportation, that is, handled them roughly and delayed their transportation without any necessity for so doing and heedless of the duty they owed appellee to protect him from the injurious consequences of such conduct, then it can not be said that they acted as an ordinarily prudent person would have acted under the circumstances, and were necessarily guilty of negligence. We therefore hold that the use of the word "unnecessarily," in the connection in which it was used in the charge, was practically equivalent to the use of the word "negligently," and that appellants have suffered no substantial injury because of said charge. As a matter of fact, however, that portion of the paragraph of the charge in question, following the clause under discussion, did require the jury to find, in order to fix liability upon appellants for the rough handling of the animals, that they were "negligently" handled, but in fixing liability for the delay of the shipment the word "unnecessarily" alone is used to characterize the delay for which a recovery might be had for any injury that may have proximately resulted to appellee's horses and mules by reason of such delay.

In reference to the third objection to the charge, we think it may fairly be said that the evidence was sufficient to raise the issues of negligent delay in and rough handling of the shipments. The evidence shows total delays in a distance of —— miles of about eighteen hours, and that the injuries inflicted upon the animals consisted of external wounds, bruises and swollen limbs of such a character as denoted physical violence. From the nature of these injuries, and from the state of the evidence relating to the causes and necessity for the delays shown, we think the jury may have reasonably inferred that appellants were guilty of negligence in the handling of the animals, as charged, and failed to exercise ordinary care to transport them promptly.

By their third assignment of error appellants contend that the trial court erred in charging the jury that the measure of plaintiff's damages was the difference in the reasonable cash market value of his animals at their destination at the time of delivery in a sound condition

and their fair cash market value in the condition in which they did arrive at their destination. There was no proof of depreciation in value of the animals except as may have been occasioned by injuries inflicted upon them through the negligence of appellants, and the charge was at least substantially correct. Besides, at the request of appellants, the court charged the jury as follows: "You are instructed that the measure of damages in this case is the difference in the market value of the horses and mules alleged to have been injured immediately before the injuries and immediately after the injuries." It is argued, in effect, that as the shipment of April 11th, contained horses and mules, and the shipment of August 9th, contained only mules, the jury must have understood that the requested charge had reference to the latter shipment alone. This contention is without merit. It is very evident that the special charge was intended to apply to both shipments and that the jury so understood it. The application of the charge is not by its terms limited to either of the shipments, nor is its language such as to authorize such a construction by necessary implication. It expressly states that "the measure of damages in the case," which necessarily applies to both shipments, is the difference in the market value of the horses and mules alleged to have been injured, which necessarily includes all the horses and mules charged to have been injured.

The fourth assignment of error is presented by the appellant, Paris & Great Northern Railroad Company alone, and is to the effect that the court erred in charging the jury that if this appellant was negligent in handling the animals, as alleged by appellee, and as a result thereof the injuries to said animals, if any, occurred on its line, then their verdict should be against the Paris & Great Northern Railroad Company. This assignment is predicated upon the theory that the evidence failed to show that the Paris & Great Northern Railroad Company handled or in any way transported the animals alleged to have been injured. This appellant alleged that it owned the line of railroad connecting with the road of the St. Louis & San Francisco Railroad Company at Arthur City, Texas, and extending from that city to Paris, and while the evidence shows that the employes operating the train, of which the cars containing appellee's horses and mules were a part, over said line of road, were in the employ of the St. Louis & San Francisco Railroad Company, yet it does not appear that the Paris & Great Northern Railroad Company's said line of road had been lawfully leased and was not in its possession and control. J. W. Hixon, the Paris & Great Northern Railroad Company's foreman and agent at Paris, testified that he received the shipments of horses and mules belonging to appellee from the St. Louis & San Francisco Railroad Company at Paris, and that he checked, handled and delivered the same to the Texas Midland Railroad. This was sufficient, in the absence of further proof, to justify a verdict and judgment against the Paris & Great Northern Railroad Company for any damage negligently inflicted upon the stock while in its possession at Paris, and while being transported over its road.

We have carefully considered all the assignments, and none, in our opinion, point out reversible error. The evidence upon the whole was

sufficient to sustain the material allegations of the plaintiff's petition and to authorize a verdict for the amount awarded by the jury. The judgment of the court below is therefore affirmed.

*Affirmed.*

Writ of error refused.