### Newman v. Newman, et al.

(Decided June 6, 1913.)

## Appeal from Floyd Circuit Court.

1. Land—Action to Quiet Title—Deed—Lands Covered By—Evidence. —In an action by the father against his children to quiet title to a tract of land, evidence examined, and held that a deed, which the father made to his wife, covered the land in controversy.

2. Judgment—Estoppel.—Where, in an action by a father against his. children to quiet his title to a particular tract of land, the children claim under a deed from their father to their mother covering the land in controversy and also other lands, they may confine their answer and counterclaim to the land in controversy,

and their failure to litigate with him the title to another tract
of land, though embraced in their deed, does not preclude them
from threafter asserting title thereto in another action by him
wherein, for the first time, the title is called in question.

JAMES GOBLE for appellant.

B. F. COMBS and SMITH & COMBS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Affirming.

.  Plaintiff, R. H. Newman, brought this action against
his son, William Newman, and his daughter, Lucy
Tackett, to quiet his title to a tract of land containing
400 acres, more or less, and lying in Floyd County, Ken-
tucky, on the waters of Clear Creek. Before answer was
filed, William Newman died intestate, leaving a widow,
Tilda, and three infant children, Teddy, Sadie and Lizzie
May. The action was revived against them, and William
Dingus appointed their guardian *ad litem*. On May 1,
1911, the widow, infants and their guardian *ad litem* filed
a joint answer, denying plaintiff's title and alleging his
possession to be that of a life tenant. They further
averred that William Newman,. at the time of his death,
was the owner of nine undivided elevenths of the tract
of land, one of which he inherited from his mother, and
the other eight-elevenths of which he purchased from
his brothers and sisters, all of which was subject to the
life estate of the plaintiff. One-eleventh was admitted
to belong to plaintiff. They further pleaded that their
mother's title was derived by deed from the plaintiff to
her, dated August 1, 1890, and recorded in the Floyd
County Clerk's office, which. deed, it is averred, covers
the land in controversy. They also pleaded that plain-
tiff's title to the. land in controversy was concluded by
the proceedings in an action which he brought on Octo-
ber 21, 1904, against his children, wherein he sought to
cancel the deed in question. The allegations of the
answer were denied by reply, and plaintiff further averred
that defendants were estopped by the proceedings in the
suit referred to. During the progress of the action the
Gibson Coal & Coke Company and W. F. White, claiming
under the Cuyuga Coal & Coke Company, filed their in-
tervening petition, asserting an undivided interest in
the coal and minerals underlying the lands in contro-
versy, by virtue of the purchase thereof from William

Newman and wife. On the final hearing the chancellor held that the title to the land in. controversy was adjudicated in the case of R. S. Newman v. Elizabeth Newman and others, and that plaintiff was concluded by virtue of the judgment rendered therein. He also adjudged that the tract of land in controversy was a part of the tract of land mentioned and described in the deed of conveyance from R. H. Newman to his wife, Juda Newman. He further adjudged that the defendants were the owners of a ten-elevenths undivided interest in the tract in controversy, and that plaintiff was the owner of a one-eleventh undivided interest, subject to the life estate of plaintiff. Plaintiff's petition was dismissed and he appeals.

The consideration in the deed made by plaintiff, R. H. Newman, to his wife, Juda Newman, on August 1, 1890, was the natural love and affection which he had for his wife.

The property conveyed is described as follows:

"A tract or parcel of land situated on the left-hand fork of Beaver Creek, and at the mouth of Clear Creek, known as the old James Newman farm, containing six hundred acres more or less, and also all the property now belonging to the said R. H. Newman."

One of the questions to be determined is: Does this deed cover the land in controversy?

Prior to the year 1881, James Newman, Sr., owned and resided on a large boundary of land lying around the mouth of Clear Creek Fork of Left Beaver Creek in Floyd County. This tract extended about a mile along the line of Main Creek and about a mile up Beaver Creek. He also owned another farm further up on Clear Creek, known as the James Osborn farm, but not adjoining the home farm. In the year 1881, and just a short time prior to his death, he, by two deeds, conveyed all of his land to Rhoda Newman and R. H. Newman, two of his children. R. H. Newman is known as Hogan Newman. The deed to R. H. Newman was executed on July 1, 1881, and embraced that part of his father's home farm lying on Stillhouse Branch of Clear Creek. The deed to Rhoda Newman from her father was executed in October, 1881, and embraces all the remainder of the lands of James Newman, Sr. All the land conveyed to Rhoda was conveyed to her for life with remainder to R. H. Newman. Under the deed to her Rhoda acquired title to the remainder of the James Newman home farm, and also to

the James Osborn tract lying further up on Clear Creek, but not adjoining the farm around the mouth of the creek, After the death of James Newman, Sr., his other children assailed the conveyances to R. H. and Rhoda Newman, on the ground of fraud and undue influence. The action was compromised and Rhoda and R. H. Newman conveyed to their brother, James Newman, Jr., that part of Rhoda's boundary lying on Oldhouse Branch and on Main Clear Creek, immediately above and adjoining R. H. Newman's Stillhouse Branch boundary. Thereafter, Rhoda ascertained that her deed gave the remainder in her land to her brother, R. H. Newman. Upon ascertaining this fact, she sued her brother R. H. Newman, and one Morgan Turner, to whom R. H. had sold part of it. In this suit she sought a correction of the deed from her father, and to recover possession of the parts of the land which she claimed had been taken from her by virtue of a forged title bond. While this suit was pending, R. H. Newman executed to his wife the deed above referred to. After making the deed to his wife, R. H. and Rhoda Newman settled their law suit. By this compromise Rhoda got all the land in fee simple below a line called the Rhoda Newman conditional line, running across the farm at the mouth of Clear Creek. Plaintiff got in fee simple the land lying above this conditional line on the Main Creek, and by Clear Creek, to the lower end of the Stillhouse Branch boundary of the tract in controversy. Juda Newman died intestate in the year 1896, leaving eleven children. William Newman, one of her children, bought the interests of nine of his brothers and sisters, and executed a contract to convey the minerals therein to the Gibson Coal & Coke Company and the Cuyuga Coal & Coke Company. One of the children of Juda Newman died, and his interests was inherited by R. H. Newman.

In the year 1899, R. H. Newman brought a suit against his children to set aside the deed in question on the ground that it was made to defraud his creditors. This suit was dismissed.

In 1904, he filed a second suit against his children to quiet his title to the boundary now in controversy. The children answered, claiming that the land was covered by the deed to their mother. Thereupon he filed an amended petition, alleging that his attorney made a mistake in describing the Stillhouse Branch property in his original petition, and asking that his title be quieted

to other lands than those set out in the original petition. His children answered, pleading the deed to their mother, and claiming title thereunder. He based this action on fraud and misrepresentation of his wife, Juda Newman, and her brother-in-law, W. H. Stewart. In giving his deposition in that action, he stated that there was a state of lawlessness existing on Beaver Creek on the day of the deed, and he wanted to leave that community and go into another state, because he thought he was in danger. He therefore made a conveyance to his wife so that she might be able to sell and convey the land and come to him in another state when he had selected a home there. This action was dismissed by the trial court, and on appeal to this court the judgment was affirmed. Newman v. Newman, et al., 124 S. W., 828. The court, in its opinion, said:

"In view of the many different statements made by appellant as to why he conveyed this land, as to what the consideration was, and the length of time which had elapsed from the making of the deed, we are of the opinion that the lower court did not err in dismissing his action."

As to the land embraced by the deed of plaintiff to his wife, Juda, the evidence for the plaintiff is as follows: Plaintiff said that the Stillhouse Branch property was no part of the land conveyed to his wife. Nelson Akers, a tenant, testified that Juda Newman did not claim the land, and that the deed does not cover the land in controversy. Catherine Akers, a daughter of Juda Newman, testified that the deed does not embrace the land now in controversy, and that her mother did not claim it. Kate Banks says that plaintiff got the land from his father, who lived on it at the time. His father lived at the mouth of Clear Creek. That part of the farm was known as the "old James Newman farm," while the tract in controversy was known as the "Hogue Newman farm." She also says that the deed in question does not cover the land in controversy. Ham Reynolds testified that since James Newman conveyed to Hogue Newman, the tract in controversy has been known as the "Hogue Newman farm." On cross examination he stated that the Stillhouse Branch tract (the land in controversy) was a part of the old James Newman farm before he deeded it to Hogue. F. C. Reynolds says that he heard Juda Newman say after she got the deed: "I have no more claim over it than you have."

On the other land, the evidence for the defendants is that the tract of land in controversy was a part of the old James Newman farm. Some time after R. H. Newman made the deed to his wife a deputy sheriff went to his house to collect an execution against him. Mrs. Newman asserted ownership of all the land and personal property, and forbade any levy thereon. Plaintiff also told the sheriff that he had no property whatever. The sheriff is corroborated by James Newman, a son of plaintiff. It further appears from various witnesses that plaintiff told them that he had made the deed to his wife to avoid the payment of his debts. There is also evidence to the effect that when requested by a party to go on his bond, he stated that he could not do so because he had no property of any kind.

It clearly appears from the evidence that James Newman, Sr., owned two tracts of land, one his home farm lying at the mouth of Clear Creek, and the other the James Osborn tract lying further up on Clear Creek and some distance away. There can be no doubt that the land in controversy is a part of the home farm. The fact that after it was deeded to plaintiff it was called the Hogue Newman farm is not very material. It may also be true that the part which Rhoda got was known as the Rhoda Newman farm. But the fact, nevertheless, remains that both tracts were known as the old James Newman farm. Furthermore the deed itself describes the land as "a tract or parcel of land situated on the left hand fork of Beaver Creek, at the mouth of Clear Creek, known as the old James Newman farm, containing 600 acres, more or less," and further adds "and also all the property now belonging to the said R. H. Newman." In other words, the deed shows a clear intention on the part of R. H. Newman to convey all his property. In addition to this, plaintiff at one time claimed that the deed was made to defraud his creditors. At another time he claimed that the deed was made in order to enable his wife to sell his property and join him in acquiring a new home out west. If either of these positions be true, it is quite remarkable that he intended to convey only that part of his real estate in which he had an interest in remainder after the death of his sister, rather than the part in which he held a complete fee, and which, on that account, was more liable to be subjected to his debts, or could have been more readily disposed of. Taking into consideration the language of the deed itself, the fact that the tract in con-

troversy is a part of the old James Newman farm, the circumstances under which the deed was made, the purpose that the grantor had in view, his subsequent declarations that he owned no property, but had conveyed it all to his wife, we conclude that there can be no doubt that he clearly intended to convey to his wife the land in controversy, and that it is embraced in and covered by the deed which he made to her.

This conclusion makes it unnecessary for us to determine whether plaintiff is estopped from maintaining this action by the judgment in the suit which he brought against his children to quiet his title to the land adjacent to the tract in controversy. Certainly the defendants in this action are not precluded by that judgment from asserting title to the tract in litigation. In that case plaintiff sought to quiet his title to an entirely different tract of land. The defendants, by answer and counterclaim, denied his title to that tract, and pleaded title in themselves. He having put in issue the title to a tract of land different from that now in controversy, they had the right to confine their defense and counterclaim to that particular tract, and were not required to litigate with him the title to any other tract, even though covered by the deed under which they claimed. That being true, their failure in that action to assert by way of counterclaim title to the land now in controversy does not preclude them from asserting title thereto in this action, where, for the first time, the title has been called in question.

Judgment affirmed.