## GALVESTON, H. & S. A. RY. CO. et al. v. NEVILLE et al. (No. 7336.)

(Court of Civil Appeals of Texas. San Antonio. April 8, 1925. Rehearing Denied May 6, 1925.)

**1. Carriers ⬳228(5)—Findings as to depreciation in value of cattle by delay and rough handling in transit held supported by evidence.**

Findings that cattle arriving too late for market on same day depreciated $5 per head in value, and that another shipment, not sold on market because of delayed arrival and poor condition, depreciated in value by $20 per head, *held* supported by evidence.

**2. Carriers ⬳228(1)—Burden on carrier to prove that damage to cattle delivered in good condition resulted from causes for which not responsible.**

Evidence that cattle, shipped under 36-hour release without caretaker, were delivered to carrier in good condition, and redelivered in damaged condition, raises presumption that damages resulted from carrier's negligence, and shifts burden to carrier to prove that they resulted from independent causes or acts, not pleaded or proved, for which it was not responsible.

**3. Appeal and error ⬳930(3)—Error in questions submitted as to depreciation in value of cattle by delay and rough handling in transit held harmless.**

Where special issues submitted, in action against carrier for damages to cattle from delay and rough handling in transit, were sufficient to raise question of actual or intrinsic value of cattle in damaged condition, and to sustain court's finding that difference between value in condition they should have arrived was amount found by jury, and carrier did not request submission of issues as to whether they had market value at point of destination, but asked number of special charges, as though case was submitted on general charge, errors, if any, in questions submitted as to depreciation in value from such causes were harmless.

**4. Trial ⬳352(5)—Questions to jury as to depreciation in value of cattle by delay and rough handling in transit held not erroneous as submitting separate issues.**

Questions to jury as to depreciation in value of two shipments of cattle by failure to arrive in time for market on certain days, and by rough handling, necessitating reconditioning for sale, of cattle in one of such shipments, *held* not erroneous as submitting two separate issues.

**5. Trial ⬳215—Giving of special instructions in case submitted on special issues unnecessary and improper.**

Where case is submitted on special issues, giving of special instructions is unnecessary and improper.

**6. Trial ⬳260(1)—Refusal of charges, sufficiently covered by charges given, not error.**

Refusal of charges, sufficiently covered by charges given at appellants' request, is not error.

**7. Carriers ⬳230(8)—Trial ⬳194(15), 240, 252(7)—Charge not to consider market values of cattle on days of arrival, if delivered with usual dispatch, held erroneous.**

Charge that if cattle, arriving too late for market on date of arrival, were delivered with usual dispatch, jury should not consider market values on days of arrival, even to show trend of market, *held* erroneous as on weight of evidence, argumentative, relieving defendant from duty to exercise ordinary care, and not warranted by evidence.

**8. Carriers ⬳228(1)—Injured condition of cattle on delivery raises presumption of negligence, in absence of explanation.**

Injured condition of cattle on arrival, without explanation of how injuries were caused, is evidence of negligence, giving rise to presumption thereof, and warranting such assumption in instructions to jury, where unexplained.

**9. Trial ⬳215—Charges as to matter, for submission of which no request was made, properly refused.**

In absence of request for submission of issue as to normal shrinkage of cattle delayed in transit, if transported and delivered with ordinary care and dispatch, special charges as to such matter, in case submitted on special issues, were properly refused.

**10. Trial ⬳105(2)—Testimony, admitted without objection, held proper for jury's consideration.**

Plaintiffs' testimony, submitted without objection, that defendants' agent, with whom he dealt in shipping cattle delayed in transit, advised him as to usual and customary time in making run from place of shipment to destination, *held* proper for jury to consider.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by W. J. Neville and another against the Galveston, Harrisburg & San Antonio Railway Company, and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

Thompson, Barwise & Wharton and Fred L. Wallace, all of Fort Worth, for appellants.

Orus O. Ross, of Wichita Falls, and J. A. Templeton, of Fort Worth, for appellees.

---

COBBS, J. Appellees brought this suit against appellants, alleging that on October 9, 1920, appellees tendered and delivered to the appellant Galveston, Harrisburg & San Antonio Railway Company, at Julia Pens, Tex., 6 cars of cattle, consisting of 131 head, for delivery at North Fort Worth, consigned to the Cassidy-Southwestern Commission Company, and that by the use of ordinary care appellants herein should have delivered these cattle at destination in time for the forenoon market of October 11, 1920. They further alleged that there was no caretaker with the shipment, and that they do not know wherein the negligence occurred. They further alleged that the same in fact were delivered at 3:50 p. m., October 11, 1920, and missed the market for that day, and that by such delay the 131 head of cattle in said shipment lost in weight, to the appellees' damage in the amount of $461.10, and that the market price at the time the same were sold had declined 45 cents per hundredweight, to appellees' damage in the amount of $638.59, or a total damage to this shipment of $1,-099.69.

They further alleged, as a second count, that on the 12th day of October, 1920, the appellees delivered to the appellant Galveston, Harrisburg & San Antonio Railway Company at Julia Pens, Tex., a second shipment of cattle, consisting of 200 head, for delivery at North Fort Worth, Tex., consigned to the Cassidy-Southwestern Commission Company; that, if appellant had used ordinary care in the handling of said shipment, the same would have reached destination in time for the market of October 13, 1920, or at least in time for the forenoon market of October 14, 1920, but that, however, the cattle did not arrive until 4:45 p. m., October 14, 1920, and due to the condition of the market thereafter appellees were forced to ship said cattle to Archer City, Tex., to be reconditioned for sale; that the cattle in said shipment were injured, crippled, and bruised, and that they were without food, rest, and water for approximately 48 hours; that the appellants were guilty of negligence in the handling and transporting of said cattle, and that the same were handled by the said appellants with great force and violence, and as a direct and proximate result of said negligence one head of cattle died and was a total loss to the appellees in the amount of $100; that the remaining 199 head of cattle were injured and depreciated in value to the amount of $20 per head, aggregating a total damage to the second shipment in the amount of $4,080; and that the appellees' entire damage in the handling of said shipments was $5,179.69, with interest thereon.

Thereafter, on the 10th day of October, 1923, appellees filed their first supplemental petition excepting to paragraph 4 of appellants' first amended answer, which said exception was sustained. Appellants' first amended original answer, in addition to general demurrer, contained a general denial.

The case was tried before a jury, and submitted to them on special issues. The jury found that the cattle had been damaged by the negligence of the appellants in the amount of $5 per head on the shipment of October 9, 1910, and $20 per head on the shipment of October 12, 1920, and on which verdict the court rendered judgment in favor of W. J. Neville and S. M. Brightwell against the Galveston, Harrisburg & San Antonio Railway Company and the Houston & Texas Central Railroad Company in the amount of $4,655, with interest thereon from date of judgment at the rate of 6 per cent., with all costs.

[1] The first proposition presented and discussed by appellants is predicated upon assignments 1, 2, 3, 4, and 5, which raise the question of the insufficiency of the evidence to justify the amounts the jury gave in answer to special issues Nos. 3 and 4, which answers it is claimed were greatly in excess of damages sustained by appellees.

The first shipment of cattle leaving Julia Pens on the night of October 9, 1920, were delivered in Fort Worth October 11, 1920. There was testimony to show that, had these cattle reached the market on Monday the 11th, instead of Tuesday the 12th, they would have sold for from 50 to 75 cents more per hundred, as the market declined rapidly.

In regard to the shipment moving from the same place, Julia Pens, on October 12, and arriving at Fort Worth on October 14th, these cattle, unlike the others, were not sold on the market, and hence no actual, accurate comparisons can be made as to the values of this shipment. Mr. Brightwell testified:

"That he only had an offer on half of these cattle, and that it was not a satisfactory offer at all—the offer was $8 a hundred—and that he knows that was what was being offered and paid for cattle such as these were on that market that morning; it was 9 cents. That with reference to the sales that were made out there at that time these 1,000-pound steers were bringing from $9 to $9.25 each day of the week. I was there all that week. That the trend of the market was from $8.50 to $9.25."

As there were two shipments of cattle, it will be necessary to dispose of each shipment separately. The cattle involved in these shipments consisted of large, heavy, beef steers, which were estimated to weigh, at the point of origin of the shipments, about 1,171 to 1,200 pounds per head.

The first shipment reached the market at Fort Worth at 11:40 a. m. and unloaded at the stockyards at 3:50 p. m., October 11, 1920, which was too late for that day's market. This shipment was held in the yards at Victoria from 6:40 p. m. to 8:45 p. m., October 9, 1920. There were a number of delays in their transportation. They were kept in

transit from point of origin to destination for nearly 46 hours, without being unloaded for rest, feed, or water. The distance traveled was 440 miles, and the average rate of speed was less than 10 miles an hour. The cattle moved under a 36-hour release. There was no caretaker with these cattle. The 6 cars of cattle were in good condition when shipped, but when they arrived in Fort Worth were in bad shape. They left Victoria Saturday night, and arrived at Fort Worth Monday morning, too late for the market on that day, and had to be held over. The cattle that sold for $9.10 on Monday were selling for $8.75 or a little better on Tuesday. After cattle have been held out a day and lost their ordinary shrinkage of 40 to 45 pounds, it is figured the shrinkage for the second day is 30 to 35 pounds. As these cattle were late for the market of the 11th, they were offered for sale the next morning, October 12, 1920. They weighed 149,110 pounds and were sold for $8.80 per hundredweight. The jury found that this first shipment depreciated in value $5 per head, as a result of negligent delays and rough handling in transit.

The second shipment consisted of 200 head of cattle of 9 cars. They were the same class of cattle as those in the first shipment. They were loaded at Julia Pens, the same place, about 5 o'clock p. m., October 12, 1920, and got out over the same line about 8 o'clock p. m., with a 36-hour release, and moved over the same route to the same point of destination, without a caretaker. The cattle were delivered to the North Fort Worth Stockyards and there unloaded October 14, 1920. When the cattle reached their destination they were bruised up badly; there were many crippled steers in the bunch; two or three had their horns knocked off; and all of them were pretty stiff and sore. Perhaps one-third or half of them were in bad condition; they had bumps on them, were swollen, hair was knocked off, and they were skinned up badly. This condition affected the sale of the cattle on the market for butchering purposes, for bruised beef spoils quickly. In this 9-car shipment, the cattle were bruised more than they usually are, which prevented their sale on the market. The market declined at least 50 cents from the forenoon of the day the cattle arrived until the succeeding morning—50 cents a hundred. Only one offer was made, and that was on only half of the cattle; it was $8 per hundred, which was not a satisfactory offer at all. There was at least a 50-pound shrinkage on these cattle in a day. They were heavy cattle and similar to the first shipment. It would take them at least 30 days to start to pick up from the injuries received. One steer was crippled from the injuries received and died afterwards. Not being able to sell the cattle, they were dipped and sent to appellees' ranch in Archer county.

If the cattle had arrived in time to have gone on the market on October 14, 1920, they would have brought $9 per hundred. Even in their crippled condition, had they arrived in time, they would have sold for over $7. If they had come through under the 36 hours it would not have been necessary to feed and water them in transit. The jury found that the cattle in this shipment were depreciated in value by delay and rough handling to the extent of $20 per head.

We think there was testimony to support the findings of the jury, and we overrule the assignments.

[2] After defining "negligence" and "ordinary care," the court submitted to the jury question No. 1, which reads as follows:

"Were the defendant railway companies, or either of them, which handled and transported the shipments of plaintiff's cattle from Julia Pens to Fort Worth, guilty of negligence as that term is above defined:

"(a) In keeping said cattle in transit longer than they should have done? Answer: Yes.

"(b) In the treatment of said cattle while they were in transit? Answer: Yes."

Paragraph 5 of the charge instructed the jury as to which party had the burden of proof on these issues, as follows:

"It appears from the evidence that no caretaker accompanied these shipments, and you are instructed that in this case the burden is upon the plaintiffs to prove by a preponderance of the evidence that the cattle, when they were delivered to, and accepted by, the defendants at Julia Pens were in good condition for shipment, and that when they were delivered to the consignees at destination they were injured, damaged, and depreciated in value more than they would have been if they had been transported and delivered with ordinary care and dispatch. The burden is also upon the plaintiffs to prove the extent of such damage and depreciation. If the plaintiffs have discharged such burden, the burden of proof then rests upon the defendants to prove by a preponderance of the evidence that such injuries and damages did not result from any negligence or want of ordinary care on the part of said defendants."

It may be true that, in a case where there is no direct testimony showing the usual and customary time for the movement of the shipment from the point of origin to the point of destination, it may be said, generally speaking, the plaintiff fails to discharge the burden of proof that the injury resulted from delays in transit. In this case, however, the proof showed in both shipments that the cattle were shipped under a 36-hour release and no caretaker accompanied the shipments.

The correct rule is forcibly and clearly stated, and the reasons upon which it rests are given by our Supreme Court in Ryan v. M., K. & T. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589. This case, on the question here at issue, has been repeatedly cited and reaffirmed by our several Courts of Civil Appeals, and by our Supreme Court. The latest decision by our Supreme Court on this question is found

in the case of Davis v. Sullivan and Orpy, 258 S. W. 157. In this case, the court reviews at considerable length, the authorities pro and con bearing on this question, and reaffirms the rule, and, in announcing its conclusions, uses the following language, viz.:

"But it has been definitely and uniformly held by the Supreme Court that, when a shipper shows delivery to, and acceptance by, a carrier of freight for shipment, and its non-delivery at destination, negligence is presumed to a sufficient extent that the plaintiff is said to have made out a prima facie case. Ryan v. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589; Mo. Pac. Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785. And, with respect to live stock shipments, unaccompanied by a caretaker, it is practically the universal holding that when the shipper shows delivery in a given condition, and its redelivery with losses and injuries, it is for the carrier to prove the injuries were due to one or more of the excepted causes, if it wishes to avoid liability on that ground. Church v. C., B. & Q. Ry. Co., 81 Neb. 615, 116 N. W. 520; and many authorities collated in note, page 93, 18 L. R. A. (N. S.) to Stiles v. L. & N. Ry. Co., 129 Ky. 175, 110 S. W. 820, 18 L. R. A. (N. S.) 86, 130 Am. St. Rep. 429."

The same rule is adopted in the leading case of Boehl v. C., M. & St. P. Ry. Co., 44 Minn. 191, 46 N. W. 333; Yazoo & Miss. Val. Ry. Co. v. Bell, 111 Miss. 82, 71 So. 272, and by our own Courts of Civil Appeals, in Railway Co. v. Montgomery, 141 S. W. 813; Railway Co. v. Franklin, 58 Tex. Civ. App. 41, 123 S. W. 1154; A., T. & S. F. Ry. Co. v. Word, 159 S. W. 375 (writ of error refused); T. & P. Ry. Co. v. Martin, 175 S. W. 707.

Therefore appellees made a prima facie case by the introduction of the testimony, because the property was not accompanied by a caretaker, was received in good condition and delivered in a damaged condition, and therefore it will be presumed that the injury and damages resulted from the negligence of the carrier.

The burden of proof at this juncture shifts to the carrier to overcome such presumption by proof that such injury and damage did not result either in whole or in part from any negligence on its part, but resulted from independent causes or acts neither pleaded nor proven, for which it was in no way responsible. It does not lie in the mouth of a common carrier of freight to receive live stock in a good condition, and slam and jam them about in transit so as to injure them, and then say, when so delivered in their injured condition, that the burden is on the plaintiff to make further proof of the injury.

We think, under the circumstances of this case, the charge was a proper one. M., K. & T. Ry. Co. v. Grain Co., 103 Tex. 542, 131 S. W. 410; T. & N. O. Ry. v. Drahn, 154 Ky. 300, 157 S. W. 382.

[3] This case was submitted on special issues and not on a general charge. Appel-lants did not request the court to submit to the jury any issues as to whether or not the cattle had a market value at Fort Worth, either at the time and in the condition they should have arrived there, or at the time and in the condition they did arrive there. Appellants submitted a number of special charges, as though the case was submitted on a general charge. Some were given, and some were not.

The issues the court submitted were sufficient to raise the question of the actual or intrinsic value of the cattle in their injured and damaged condition, and sufficient to sustain a finding by the court that the difference between the value of the cattle at the time and in the condition they should and would have arrived at their destination, if they had been transported and delivered with ordinary care and dispatch, was equal to the amounts found by the jury, and the errors, if any, in questions 3 and 4 were harmless. G. C. & S. F. v. Hines (Tex. Com. App.) 250 S. W. 1013; M., K. & T. Ry. Co. v. Chittin (Tex. Civ. App.) 40 S. W. 23.

[4-6] We do not think questions 3 and 4 submit two separate issues. Each submitted but a single issue. The case having been submitted on special issues, the giving of such special instructions was not only unnecessary, but was improper. See T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188. The matters covered by the charges had already been sufficiently covered by special charges No. 22 to 27, inclusive, which were given by the court at defendant's request. St. L. S. W. Ry. Co. v. Haney (Tex. Civ. App.) 94 S. W. 386.

[7-9] Charge No. 7 was upon the weight of the evidence, was argumentative, and was incorrect, in that (1) it relieved the defendants of the duty to exercise ordinary care in the transportation and delivery of the cattle; (2) it instructed the jury that, if the cattle were delivered with the usual dispatch and arrived too late for the market on the date of their arrival, then the jury was instructed not to consider the market values of the cattle on the days of their arrival, for any purpose, not even for the purpose of showing the trend of the market, and this though the defendants may have negligently failed to transport and deliver the cattle with ordinary care and dispatch; (3) this requested instruction was not only argumentative and was upon the weight of the evidence, but it was not warranted by the evidence, in that the evidence of the conductors and agents who handled the shipments, and which was introduced by the defendants, disclosed that there were numerous delays in the transportation of said cattle which were unexplained, and but for which the cattle would have reached their destination in time for sale on the days of their arrival. Moreover, the injured condition of the cattle in the second shipment, with no explanation of how such

injuries were caused, was evidence of negligence, which, being unexplained, gave rise to a presumption of negligence, and would have warranted the court in so assuming in his instructions to the jury. T. & N. O. Ry. Co. v. Drahn (Tex. Civ. App.) 157 S. W. 282; St. L. & S. F. Ry. Co. v. Franklin, 58 Tex. Civ. App. 41, 123 S. W. 1150 (writ of error refused). This case was cited with approval by the Supreme Court in Davis v. Sullivan (Tex. Com. App.) 258 S. W. 157; S. A. & A. P. Ry. Co. v. Jackson and Allen (Tex. Civ. App.) 187 S. W. 488; G. H. & S. A. Ry. Co. v. Powers, 54 Tex. Civ. App. 168, 117 S. W. 461; Railway Co. v. Greening (Ky.) 100 S. W. 826. No request was made by defendants for the court to submit to the jury any issue as to what the normal shrinkage of such cattle would have been if they had been transported and delivered with ordinary care and dispatch, and no such issue was submitted. In this state of the record the charges in question were properly refused. Davis v. Sullivan et al. (Tex. Civ. App.) 242 S. W. 764.

[10] Appellants complain in their ninth proposition that the court erred in allowing witness W. J. Neville to testify:

"That the agent with whom he dealt in the shipment of these cattle advised him as to the usual and customary time for making the run from that place to the market at Fort Worth. He asked him about the rules, and the agent said if he executed a 36-hour release they would make the market all right in 36 hours."

The testimony having been admitted without objection, it was proper for the jury to consider it. Western Union Tel. Co. v. Brown (Tex. Civ. App.) 75 S. W. 359; Hatch v. Pullman Sleeping Car Co. (Tex. Civ. App.) 84 S. W. 246; Moore v. Supreme Assembly, etc., 42 Tex. Civ. App. 366, 93 S. W. 1077.

It has been held that the silence of the railroad in such a case as this, when it is shown to be in the possession of all the information, not only strengthens the probative force of the affirmative proof, but is of itself clothed with a certain probative force. M., K. & T. Ry. Co. v. Day, 104 Tex. 237, 136 S. W. 435, 34 L. R. A. (N. S.) 111; State Bank v. Burrus Mill & Elevator Co. (Tex. Civ. App.) 207 S. W. 400, 16 Cyc. 933.

We have thoroughly considered each and all the propositions submitted by appellants. We think the court submitted the questions to the jury clearly and fairly, and that the entire case was covered by the court's issues and those given at the request of the parties. In view of that fact, those issues requested by appellants and refused were in substance given to the jury by the court or were harmless.

We think the findings of the jury were supported by the testimony, and we find no error committed that would justify the reversal of this case.

All the assignments and propositions of appellants are overruled, and the judgment of the trial court is affirmed.