## YAZOO & M. V. R. R. Co. v. BELL.

[71 South. 272.]

1. CARRIERS. *Carriage of live stock. Actions. Burden of proof.*

Where cattle were in good condition when delivered to a carrier for shipment and when the car in which they were loaded arrived at its destination, some were missing, one was dead and others injured, it devolved upon the carrier to acquit itself of liability by showing that this did not occur by reason of its negligence.

2. CARRIERS. *Carriage of live stock.*

Where a bill of lading fixing an agreed valuation for shipment of live stock showed that the rate was reduced in consideration of

the lessened liability, but did not show that the reduction of the rate was a consideration for the agreement to give notice of injuries in writing within ten days after delivery of the shipment or that such provision would have been omitted from the bill of lading containing no limitation of liability, the provisions for notice is unenforceable, being without consideration.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by W. H. Bell against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

On the afternoon of November 16, 1912, appellee delivered to appellant at Pocahontas, Miss., forty-six head of cattle, for shipment to New Orleans, La. The cattle were in good condition when loaded into the car in which they were to be transported; but when the car arrived in New Orleans three of the cattle were missing, one heifer was dead in the car, and others of the cattle were bruised and otherwise injured. The conductor in charge of the train, of which the car of cattle in question constituted a part, from Pocahontas to Jackson, Miss., testified that the train was properly equipped, properly handled, and that on its arrival at Jackson, the cattle were in good condition. On its arrival in Jackson at ten-thirty p. m. of the day of shipment, the train was turned over to the yard-master, and the evidence is silent, except as hereinafter stated, with reference to what disposition was then made of the car in which the cattle were loaded, until six-ten the next evening, when it was incorporated into a train on the Illinois Central Railroad, which train, at ten-twenty p. m., departed for New Orleans. The conductor in charge of this train, from Jackson to McComb, testified that it was properly equipped, properly handled, and that the cattle suffered no injury between Jackson and McComb, at which latter place he turned the train over to another conductor who was in charge to Harrahan, La. On the waybill turned over to the conductor who had charge of the train from

Jackson to McComb, there appeared a notation indicating that "three head were dead and three badly crippled at Jackson," and that the car had been "unloaded and reloaded" at that point. When the car was turned over to the conductor of the train at Jackson, several of the cattle were down, but he got all of them up but one, and neither this one nor the others appeared in any way to be injured; on leaving Brookhaven two of them were observed to be down in the car, but appeared in no way to be injured. The conductor who had charge of the train from McComb to Harrahan stated that it was properly equipped, received no improper handling, and the cattle were not injured while in his charge. The conductor in charge of the train from Harrahan to the Crescent City Stockyards, the place of delivery and about ten miles from Harrahan, stated that when the car was delivered to him there was "one yearling dead and there was also a yearling gored near the shoulder." He further stated that the train was properly handled while in his charge.

The bill of lading on which these cattle were shipped, and which was signed by appellee, was headed, "Live Stock Contract"; and among its stipulations occur the following:

"(5) It is further expressly agreed that the value of the live stock to be transported under this contract does not exceed the following sums:

Each horse (gelding or mare) or pony, stallion, mule or jack............................................ $100.00
    Each ox or bull.......................................... 50.00
    Each cow ................................................ 30.00
    Each calf or pig ........................................ 10.00
    Each sheep ............................................. 3.00

"And the liability of the railroad company for any loss or damage for which it may be responsible shall not exceed the actual cost at the point of shipment, and in no event exceed the above valuations for each animal.

"(6) It is further agreed by the shipper that no claim for loss or damage to stock shall be valid against said

railroad company, unless it shall be made in writing, verified by affidavit and delivered to the general freight agent, or freight claim agent, of the railroad company, or to the agent of the company at the station from which the stock is shipped, or to the agent of the company at the point of destination, within ten days from the time said stock is removed from said cars.''

It is also provided that:

''When the declared valuation shall be greater than the printed valuation specified in the contract below, the agent will erase the printed valuation and insert the declared valuation. In such cases an addition of twenty-five per cent. will be made to the rate for each one hundred per cent. or fraction thereof of the additional valuation declared by the shipper.''

The valuations printed in this bill of lading were accepted by appellee, so that no change therein was made.

Notice of appellee's claim was not given to appellant within ten days after the arrival of the cattle in New Orleans.

*F. M. West* and *Mayes & Mayes*, for appellant.

*J. A. Baker* and *J. B. Ricketts*, for appellee.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). Numerous reasons are assigned for reversing the judgment of the court below, but the only one we deem it necessary to specifically notice is: That no liability on the part of appellant has been shown, first, because the evidence does not disclose that the cattle were injured by reason of the negligence of appellant or of the Illinois Central Railroad Company; and, second, because the provision in the bill of lading requiring written notice of appellee's claim for damages, verified by affidavit to be delivered to certain of appellant's agents within ten days from the time the stock were removed from the car, was not complied with.

It appearing from the evidence that the cattle were in good condition when delivered to appellant for shipment, and that when the car in which they were loaded arrived in New Orleans, some of them were missing, one was dead, and others were injured, it devolved upon appellant to acquit itself of liability by showing that this did not occur by reason of its negligence. *Railroad Co.* v. *Abels,* 60 Miss. 1017; *Railroad Co.* v. *Bigger,* 66 Miss. 319, 6 So. 234. This appellant failed to do for the reason that the evidence is wholly silent as to the handling of the car while it was in Jackson, Miss.

The provision in the bill of lading requiring notice in writing to be given appellant of appellee's claim within ten days after arrival of the cattle in New Orleans cannot be availed of here under the rule announced in the case of *Railroad Co.* v. *Harriman Bros.,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, for the reason that it does not appear from the evidence that this special feature of the contract was supported by a consideration. It is contended by counsel for appellant that the consideration for this provision of the contract was a lower freight rate obtained by appellee because of the acceptance by him of this bill of lading. This is true in so far as the stipulations therein relative to the value of the cattle are concerned, but it is not true with reference to the clause of the bill of lading here in question. All that appears in the evidence with reference to the freight rate is the provision in the bill of lading indicating that a higher rate would be charged in event the declared valuation of the cattle should be greater than that printed therein. In any event, for aught that appears from the evidence, the bill of lading would have contained the stipulation here in question.

*Affirmed.*