Illinois Cent. R. Co. *v*. W. M. Atkinson & McDonald Co.

[74 South. 616, Division B.]

1. CARRIERS. *Injury to live stock. Notice. Sufficiency.*

A provision in a carrier's bill of lading requiring notices of injury to live stock to be filed, verified by affidavit, within ten days after the injuries occurred, is substantially complied with by

an unverified letter, where the carrier did not on receipt of such letter, insist on the claim being verified before the expiration of the ten days.

2. Carriers. *Injury to live stock. Sufficiency of evidence.*
Where cattle were in good condition when delivered to the carrier, and when received, some of the animals were dead and others injured, the carrier has the burden of showing that the injuries were not caused by its negligence, and to escape liability must account for its handling of the cattle during all the time they were in its charge.

3. Same.
But this burden is met when the carrier shows by positive evidence that the cattle were properly handled while in transit, except when the car of cattle was placed on a side track at one of its stations, where it remained from 11:30 P. M. until the following morning about 4:20 A. M., and its employee at this station, whose duty it was to handle this car after it was placed upon the side track, testified that under the rules and regulations of the company, no other person had the right to enter upon this particular track and move or deal with this particular car of cattle except himself; that the employees of the carrier did not handle such cars except when instructed by the company and that no employee other than himself would have undertaken to move or disturb the car where it was placed.

4. Carriers. *Injury to live stock. Extent of duty.*
The law does not require a carrier to keep some person present to watch a car to see that it is not injured or moved, nor does it require a large railroad corporation to produce all of its employees who work on a yard to show that each particular employee did not in fact run into a car of cattle with an engine or freight car.

Appeal from the circuit court of Capiah county.

Hon. J. B. Holden, Judge.

Suit by W. M. Atkinson & McDonald Company against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders,* for appellant.

The peremptory instruction requested by the defendant at the close of the testimony should have been given,

and in refusing to grant it, the court erred. *R. R. Co.* v. *Bigger,* 66 Miss. 319; *R. R. Co.* v. *Teams,* 75 Miss. 147; *I. C. R. R. Co.* v. *Peel,* 70 So. 887; *Y. & M. V. R. R. Co.* v. *Bell,* 71 So. 272.

There are numerous other citations of authorities which might be referred to in support of these cases, but we take it that the rule established by this court in the *Bigger Case, supra,* still prevails and is not now to be disturbed. We maintain that the instant case falls squarely within the rule announced by the court in that case, in view of the fact that it affirmatively appears from the undisputed testimony in the case, that from the time when the cattle were loaded at Wesson, Mississippi, until they were delivered by the carrier to the stockyards at New Orleans, Louisiana, there was no fault, negligence or want of care in any respect on the part of the carrier or its employees in handling the stock, or in the running or management of the train; and further, that the equipment and appliances of the train were adequate, and there was no delay of any kind in the transit. The mere fact that two of these cattle were injured, is not sufficient to hold the carrier liable, because they were animals which were being transported in a manner contrary to their habits and instincts and might easily have injured or destroyed themselves or each other, notwithstanding every reasonable precaution was used to prevent it. For such occurrences the carrier is not answerable when it shows that it has provided suitable means of transportation and exercised that degree of care which the nature of the property requires.

We therefore respectfully submit that the judgment of the lower court should be reversed and the cause remanded.

*McNeil & Loeb,* for appellant.

The action of the court in refusing the defendant peremptory instruction was eminently correct for a number of reasons.

When the plaintiff had made out its case by showing delivery to the carrier in good condition and received by consignee in damaged condition, it devolved upon the defendant company to show its freedom from negligence by showing what handling it made of the shipment from the time it left its point of origin until its delivery to the consignee. *R. R. Co.* v. *Bigger,* 66 Miss. 319; *R. R. Co.* v. *Thames,* 75 Miss. 147.

The defendant failed to meet this burden in two respects: First, it failed to show by competent evidence the handling of the cattle during the six hours and twenty minutes of its stay at Harahan Yards.

"Where cattle were in good condition when delivered to the carrier and when received some of the animals were dead and others injured, the carrier has the burden of showing that the injuries were not caused by its negligence, and to escape liability must account for its handling of the cattle during all the time they were in its charge." *Y. & M. V.* v. *Bell,* 71 So. 272.

"The Bell case is similar in many respects to the instant case. In the Bell case the cattle arrived at Jackson, Mississippi, in good condition. Some sixteen hours or more later, when the car was picked up at Jackson, to be taken to its destination, some of the cattle were injured and some were entirely missing. In this case the cattle arrived at Harahan in good condition. When they left there some six hours later one cow was dead, and one cow was in bad condition.

However, the railroad company failed to meet this burden by failing to show delivery to the consignee. No one knows what became of these cattle, nor what treatment they received from the time they were delivered to the Crescent City Stock Yards until they were delivered to the consignee, Rice.

Further, we say, the record shows affirmatively that defendant was guilty of culpable negligence in the handling of the shipment of stock, for the reason that it was shown by the evidence that when the car left Harahan one cow was dead and one was down in the car in bad condition, and so far as the record discloses no effort was made on the part of the railroad company to get this cow on her feet. This we say, was a breach of the duty owing from the railroad company to the plaintiff.''

''Where a jack was shipped in a crate, and during the transportation got down in the crate, it was the duty of the carrier to remedy the situation by putting the jack on its feet. If sufficient force was not at hand it should have been procured.'' *Express Co.* v. *Emerson,* 101 Mo. App. 62, 74 S. W. 132. This is a corollary, of the general rule stated in Third Edition Hutchinson on Carriers, page 702, section 634. *Kinnick* v. *R. R. Co.,* 69 Iowa, 665. This refusal of the court to grant defendant's request for a peremptory instruction is the only point urged by appellant, and accordingly we submit the case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant in the circuit court of Copiah county for injuries to cattle shipped by the appellee over the road of appellant. The cattle were loaded into the cars by the plaintiff at Wesson, Miss., and were carried by one engineer from Wesson to McComb, Miss., and by another to Harrahan, La., where the car containing the cattle was placed upon a side track about eleven thirty at night, and switched to the stockyards at New Orleans by another engineer of the appellant. When the cattle were unloaded, one was dead in the car and another injured. The injured one was taken in charge by the United States government authorities and held for a period of twenty-one days, and was then re-

leased and sold by the consignee for the account of the
consignor. The bill of lading for shipment placed the
valuation upon the cows at thirty dollars per head, and'
this amount is sued for in the declaration, credited with
the amount the injured cow brought. Joseph McDonald,
a son of the McDonald interested in appellee company,
accompanied the shipment from Wesson, Miss., to Har-
rahan, La., arriving at that point about eleven thirty
at night. He rode in the caboose of the freight, and
when he got down to where the car which contained the
cattle had stopped, which, while in the train, was near
the engine, it had been switched on to the yards or side
track, and he did not see the cattle that night. The
cattle were moved from the yard at Harrahan about
four twenty the next morning to the stockyards at New
Orleans and there unloaded. Joseph McDonald testified
there was no rough handling in transit to Harrahan,
La., and testified as to the condition of the cattle when
he saw them the next morning, and said that the one
that was dead did not appear to be trampled on; that
its head was near the end of the car, and he thought
possibly its neck was broken, though he made no exam-
ination and could not tell as to that, but that there were
no sores on the cattle; that the shipment of cattle were
horned cattle; that he did not see any signs of violence
on the cattle to show they had been trampled. The en-
gineers having charge of each section of the distance
between Wesson and Harrahan testified that their train
was properly equipped, and that there was no rough
handling of the cars in transit between Wesson and
Harrahan. The conductor who was in charge of the
train when it reached Harrahan testified that he moved
the cattle car upon the main line to the side track on
the yards, and that there was no rough handling, and
the cattle were in good condition when they were placed
on the side track in the yards. Mr. Telotte testified that
he handled the car from Harrahan, La., to the stock-
yards in New Orleans, and that the car was properly

handled; that there was no rough handling, and that he was the only person authorized to take charge of this car on the track in the yards at Harrahan; and that while he did not see the car during all the time that intervened between eleven thirty p. m. and four twenty a. m., he knows no other engineer of the company on the yards ran into this car of cattle. The cattle were loaded on September 11, 1913, and on the 13th the plaintiff notified the claim agent of the railroad company at New Orleans that there was one dead cow in the car, one badly bruised and detained by order of the government inspector for twenty-one days, and one cow damaged, but no particulars given, and that this letter was to give notice that claim would be filed for damage. The bill of lading of the company contained the following stipulation.

"(6) It is further agreed by the shipper that no claim for loss or damage to stock shall be valid against said railroad company, unless it shall be made in writing, verified by affidavit, and delivered to the general freight agent, or freight claim agent, of the railroad company, or to the agent of the company at the station from which the stock is shipped, or to the agent of the company at the point of destination, within ten days from the time said stock is removed from said cars."

The receipt of the above-mentioned letter was acknowledged by the general freight agent at New Orleans, on September 18th, in which acknowledgment it was stated the letter had been referred to B. D. Bristol, freight claim agent, Chicago, Ill., and if the claim was made for damage to the car of cattle referred to, to please send the claim to Mr. Bristol at Chicago. On November 24th, the appellees sent formal claim to Mr. Bristol, freight claim agent, which, on December 12th, was acknowledged, but the letter of December 12th, called attention to the stipulation of clause 6 in the bill of lading, quoted above, claiming that the claim was not filed, and verified by affidavit within the ten days, and declined to pay the claim

or make allowance for the cattle. There was judgment in the court below for the appellee, who was plaintiff there.

The questions presented for decision are: First, whether the plaintiff was barred by failure strictly to observe clause 6 of the bill of lading by not presenting claim, verified by affidavit, within ten days; and, second, whether the railroad company was guilty of negligence, and had complied with the law in showing proper handling of the cattle accepted by them for shipment.

As regards the first proposition, we think, under the facts of this case, that the rule requiring the notice to be filed, verified by affidavit, within ten days after the injuries occurred, that there was a substantial compliance with it by the letter written, especially since the railroad company did not, on receipt of that letter, insist on the claim being verified before the expiration of the ten days. The notice given by appellee put the company upon notice of the claim, and it could ascertain all available facts, and, if it desired to insist upon the claim being verified by affidavit, should have given notice of its insistence on this requirement. It was held in *Yazoo, etc., R. Co.* v. *Bell,* 111 Miss. 82, 71 So. 272, that this particular clause was unenforceable, as being without consideration, and the bill of lading in that case contains the same clause as the one in this case.

In the Bell Case, the court announced the rule on the second proposition, as shown in the first syllabus of the opinion in that case, as follows:.

"Where cattle were in good condition when delivered to the carrier, and when received some of the animals were dead and others injured, the carrier has the burden of showing that the injuries were not caused by its negligence, and to escape liability must account for its handling of the cattle during all the time they were in its charge."

It is insisted by the appellee in the present case that the carrier has not accounted for the handling of the cattle during the period between the arrival of the ship-

ment at Harrahan, about eleven thirty p. m., until the following morning about four twenty a. m. While it is true that the appellant did not have any witness who testified from personal knowledge as to the exact condition of the cattle during this period of time, yet its employee at Harrahan, whose duty it was to handle this car after it was placed upon the yards at Harrahan, testified that under the rules and regulations of the company, no other person had the right to enter upon this particular track and move or deal with this particular car of cattle except himself; that the employees of the company do not handle such cars except when instructed by the company; and that no employee other than himself would have undertaken to move or disturb the car where it was placed. We do not think the law requires a carrier to keep some person present to watch a car to see that it is not injured or moved, nor do we think it requires a large railroad corporation to produce all of its employees who work on the yard to show that each particular employee did not in fact run into this car of cattle with an engine or freight car. The proof produced in this record is all that could be reasonably expected of the company, under the circumstances surrounding this transaction, and if the plaintiff desired to establish facts that would rebut this proof on the part of the railroad company, he could have introduced other evidence tending to overcome or rebut the proof made by the carrier.

The facts in this case are different from the facts of the Bell Case, with reference to what was done during the period of time between the movements of the cattle. In that case, there was an absence of any proof as to how the yard force operated, which the proof in this case covers. Under the proof in this case, there is no liability imposed upon the railroad company for the injury to the cattle, and as it does not reasonably appear from the record that there is any other proof available, the judgment is reversed, and judgment entered here for the appellant.

*Reversed, and judgment here.*