**GALVESTON, HARRISBURG &. SAN ANTONIO R. CO. et al. v. CANALES.**
**(No. 7919.)**

Court of Civil Appeals of Texas. San Antonio. Feb. 20, 1928.

Rehearing Denied March 14, 1928.

1. **Appeal and error** ⟷265(1)—**Defendants, having excepted to judgment, were not required to except to judge's findings of fact.**

Where, after judgment, finding for shipper in damages for injuries to cattle in transit, defendants filed a motion for new trial which was overruled by court and defendants excepted and gave notice of appeal, it was not necessary to file exceptions to findings of fact and conclusions of law to secure their review.

2. **Carriers** ⟷228(5)—**Evidence held not to show that cattle were injured in transit by railroad's negligence.**

In action against railroad for injuries to cattle in transit, evidence *held* not to show that injury resulted from negligence of railroad from rough handling, but rather that condition of cattle was due to arsenical poisoning because of having been dipped the day before they were shipped.

Appeal from Jim Wells County Court; R. R. Mullen, Judge.

Action by A. T. Canales against the Galveston, Harrisburg & San Antonio Railway Company and others. Judgment for the plaintiff in a justice court, and from judgment for plaintiff on appeal to the county court, defendants appeal. Reversed, and judgment rendered for defendants.

Kleberg & North, of Corpus Christi, for appellants.

Perkins & Floyd, of Alice, for appellee.

FLY, C. J. Appellee on a demand for damages in the sum of $180 to a shipment of 28 head of cattle from Premont to Fort Worth, Tex., against the Galveston, Harrisburg & San Antonio Railway Company and the Houston & Texas Central Railroad Company, recovered a judgment for the sum of $176 in a justice court. Appellants appealed to the county court, where the cause was heard by the county judge without a jury and judgment was rendered in favor of appellee for $168.

The county judge at the request of appellants filed his conclusions of fact and law, which are contained in the record. There is also a statement of facts. Appellants filed a motion for new trial, which was overruled by the court, and appellants excepted and gave notice of appeal.

[1] Appellee insists that appellants did not file any exceptions to the findings of fact by the judge and cannot therefore complain that such findings are not based on the facts, and this court is cited to the cases of Pugh v. Werner (Tex. Civ. App.) 166 S. W. 698; Carrington v. Carrington (Tex. Civ. App.) 230 S. W. 1029, and Compania Bancaria v. Border National Bank (Tex. Civ. App.) 265 S. W. 599. Neither of the cases sustains the contention of appellee in this case. In Pugh v. Werner it was held that an appellant could not complain of a failure to find certain facts when there had been no request for such additional findings and an exception taken to such failure to so find. It was not shown in that case that a statement of facts was in the record or that a motion for new trial was overruled and exception taken. In the Carrington Case the court held that the assignments of error did not attack the findings of fact of the trial court. In the Compania Bancaria v. Border National Bank Case it does not appear that a motion for new trial was overruled and exception taken. In the case of Voight v. Mackle, 71 Tex. 78, 8 S. W. 623, and cited and adopted in Thompson

v. State of Texas, 23 Tex. Civ. App. 370, 56 S. W. 603, it is held that when a motion is filed and overruled and the judgment excepted to the appellant is not precluded from attacking the findings of the trial judge, though exceptions were not taken to the findings. Again, in the case of Hahl v. Kellogg, 42 Tex. Civ. App. 636, 94 S. W. 389, it is held, by this court, through Associate Justice Neill:

"It is settled by an unbroken line of authorities that it is not necessary to take exceptions to findings of law and facts when there is a statement of fact in the record in order to review them on appeal."

In the case of Hess v. Turney, 109 Tex. 208, 203 S. W. 593, it was said:

"The judgment of the court having been excepted to, it was not necessary that exception be also taken to the conclusions of law and fact to secure their review on appeal under due assignments of error."

[2] The uncontradicted evidence shows that the cattle were handled carefully and with due precaution from the initial point of shipment to the point of destination and there was no evidence to sustain the charge of rough handling, unless it be the fact that six of the cows died from bruises after reaching Fort Worth. The evidence is not satisfactory as to the condition of the cattle when they were delivered to appellants. They were dipped in an arsenical compound on the afternoon of May 21, 1926, after having been driven from a ranch, and were placed in a car next morning at 7 o'clock. A veterinarian, introduced by appellee, stated that:

"The symptoms brought about by arsenical poisoning are similar to the symptoms caused by exposure and rough handling sustained by animals transported over the railway."

While expressing an opinion that if the dip is properly mixed and the cattle are permitted to dry there will be no ill effects therefrom, he also stated that the arsenical poisoning would develop in about 60 hours; that is, it would develop in cattle dipped on May 21st on night of May 23d. The cattle arrived in Fort Worth on afternoon of May 23d, 48 hours after they were dipped, and the agent of consignee was not certain whether he saw the cattle until the morning of May 24, at least 60 hours after they were dipped. We call attention to this testimony as leaving in doubt whether the cattle had been injured by rough handling or by arsenical poisoning. The testimony of appellants removed all doubt as to what caused the death of the cattle. First, they showed that the cattle had not been roughly handled but were transported with great care; and, second, it was shown by a veterinarian at Fort Worth

that the bad condition of the cattle resulted from arsenical poisoning. He said the poison would cause the cattle to get down in the cars and then they would be trodden upon. He stated that all of the cattle in this car showed signs of poisoning, and produced his record kept at the time to show that he had entered therein that "all show sign of dip poisoning." He was in the employment of the Western Weighing & Inspection Bureau. Another veterinarian for the same corporation made a post mortem of one of the cows and found the lungs congested, which had been caused by the dipping.

Under the facts contained in the record we conclude that there was no testimony that showed that the cattle were injured through the negligence of appellants, and the judgment will be reversed and judgment here rendered that appellee take nothing by his suit and pay all costs in this behalf expended.