## TEXAS & N. O. R. CO. et al. v. MILLER BROS. et al. (No. 7402.)

Court of Civil Appeals of Texas. Austin. Dec. 11, 1929.

Rehearing Denied Jan. 8, 1930.

See, also, 22 S.W.(2d) 986.

Baker, Botts, Parker & Garwood and Andrews, Streetman, Logue & Mobley, all of Houston, and E. A. Landman, of Athens, for appellants.

Bishop & Holland, of Athens, for appellees.

BAUGH, J. This was a suit for damages to a carload of cattle shipped by the appellees over appellants' lines of railroad from Crockett in Houston county, Tex., to Kemp in Kaufman county, Tex., on February 9, 1927, which resulted in the death of five head and injuries to the remainder. In response to special issues, the jury found the appellants guilty of negligence proximately causing the injuries complained of, that the cattle killed were worth $180, and that the remainder were damaged in the sum of $41. Judgment in favor of appellees. The railroad companies have appealed.

Appellants bring several propositions which present substantially only three issues: (1) That the evidence does not support the verdict of the jury, and that the court should have directed the verdict in favor of appellants; (2) in substance, that the appellees, having pleaded specific acts of negligence, and not having proved same, they were not entitled to recover; and (3) that, where cattle are shipped from one point to another for pasture purposes, and there is no evidence of actual damages, such as feed bills, medicine, bills of veterinarians, etc., and the injured cattle recovered from their injuries, no damages were shown.

We do not sustain any of these contentions. The allegations of negligence were only general, more so than in the case of St. Louis Southwestern Ry. Co. v. Weathersbee, 22 S.W.(2d) 986, and that of the Texas & N. O. R. R. Co. v. Miller Bros., 22 S.W.(2d) 989. The pleadings merely alleged that the cattle were delivered to the receiving carrier in good condition, and that same were "jostled and jolted, bruised and battered to such an extent" that the injuries complained of resulted.

Having shown that the cattle were delivered to the carrier in good condition, and were by it redelivered to the owners in an injured condition, the burden shifted to the appellants to affirmatively exempt themselves from liability. Davis v. Sullivan & Opry (Tex. Com. App.) 258 S. W. 157; Galveston, H. & S. A. Ry. Co. v. Neville (Tex. Civ. App.) 272 S. W. 597.

The appellants rely largely on the case of Galveston, H. & S. A. R. Co. v. Canales (Tex. Civ. App.) 3 S.W.(2d) 589, insisting that that case is on all fours with the case at bar. In the instant case the facts were substantially as follows:

After having been fed some ten days on meal and hulls, these cattle were driven on February 9th some 10 or 12 miles to the town of Crockett for shipment, arriving there about noon. Late that afternoon they were dipped in an arsenical solution, shortly afterwards loaded on the cars, left Crockett at 8:25 p. m., and arrived at Palestine at 10:15 p. m. The evidence showed that there was no rough handling prior to arrival at Palestine. They remained at Palestine from 10:15 p. m. to 4:25 a. m., at which time the car was picked up at Palestine and transported to Jacksonville, arriving there at 5:45 a. m., February

10th. Upon arrival at Jacksonville, three of said cattle were dead, several others down in the car, and others skinned and bruised. There the T. & N. O. refused to accept them from the International & Great Northern until the dead cattle were removed from the cars, and those down in the cars put on their feet. This delayed their departure from Jacksonville until shortly after noon. The evidence shows no rough handling between Jacksonville and Kemp, at which point they arrived late in the afternoon of February 10th. Upon redelivery to the owners they were badly bruised, some had hips knocked down and horns knocked off, and two more of them died before they could reach the pasture three miles away.

The record is silent, however, as to how the cattle were handled at Palestine, but the conductor for the International & Great Northern train which transported these cattle from Palestine to Jacksonville testified as follows:

"A shipment of cattle coming in from Crockett in Houston County, Texas, through Palestine in Anderson County, Texas, would come into the south yards. The train on which it came into the south yards would then be broken up, and where I received these cattle on my train No. 66 was in the north yards. In order for these cattle to get from the south yards to the north yards, they would have to be switched around and handled through the interchange yards. I do not know who handled these cattle through the interchange."

Appellants seek to excuse themselves for the injuries inflicted on the ground that such injuries resulted from dipping the cattle at Crockett; and introduced a veterinarian who testified that dipping *"may* bring about symptoms similar to those caused by exposure and rough handling by a railroad company. This is caused by absorption of the poison." On cross-examination, however, he further testified: "If the solution (that is, the arsenical solution in which the cattle were dipped) is properly mixed it is not liable to poison the animal. It is generally the case when the solution is not properly mixed." There was no evidence as whether or not the solution in which these cattle were dipped was properly mixed. The law prescribes the contents of such mixture, and makes it the duty of the tick inspector to supervise same in connection with the dipping. In the absence, therefore, of a showing that the solution was not properly mixed, it will be presumed that it was.

This case is clearly distinguishable from Galveston, H. & S. A. R. Co. v. Canales, supra. In that case the veterinarian inspected the cattle himself, and testified as a fact that the injuries resulted from arsenical poisoning. In that case the 60-hour period required for the effects of the arsenical poison-

ing to manifest themselves had expired at the time of the examination of the cattle. In this case less than 24 hours had expired between the time of loading and the time the cattle reached their destination, during which time five of the cattle had died. It is likewise manifest that arsenical poisoning would not knock the hips down nor the horns off the cattle.

The record wholly fails to show the manner in which the cattle were handled at Palestine in breaking up the train in which they were transported, and in switching them into the north yards. The record does disclose that this handling occurred in the nighttime, when it was raining, and the injuries complained of are obviously such as might have been caused by such switching operations. From this the jury could readily conclude, and probably did conclude, as was their province, that the injuries were so caused, and accepted that as the cause of the injuries rather than the testimony of the veterinarian that such injuries *may* have occurred from arsenical poisoning.

There is no merit in the third contention of the appellant. Reduced market value of the cattle at destination resulting from negligence is the test of recovery, regardless of whether they are to be sold on the market or placed in a pasture. Texas & N. O. R. R. Co. v. Miller Bros., this day decided by this court; Gulf, C. & S. F. Ry. Co. v. Stanley, 89 Tex. 42, 33 S. W. 109.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.